RHODES v. SMITH ET AL.

[78 South. 619, Division B.]

PRINCIPAL AND AGENT. *Power of attorney. Fraud.*
Under the facts in this case which was a suit to cancel a power of attorney and contract, the court held that the chancellor was not justified by the evidence in holding that such power of attorney and contract was fraudulently obtained or that defendant was guilty of fraud in the exercise of such power.

APPEAL from the chancery court of Yazoo county.
HON. O. B. TAYLOR, Chancellor.

Bill by Anna Lee Smith, Miss Ethel Smith, Mrs. Ella M. Chisolm and W. Lem Smith against C. F. Rhodes, who filed a cross-bill judgment in favor of first three plaintiffs against the last-named plaintiff. Defendant appeals and last-named plaintiff brings cross-appeal.

The facts are fully stated in the opinion of the court.
118 Miss.—14

*E. L. Brown* and *Barbour & Henry*, for appellant.

*E. F. Noel* and *Holmes & Holmes,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

Anna Lee Smith, W. Lem Smith, Miss Ethel Smith, of Holmes county, Miss., and Mrs. Ella M. Chisolm, of Yazoo county, Miss., filed a bill in the chancery court of Yazoo county, Miss., to cancel certain contracts or powers of attorney held by C. F. Rhodes, an attorney of Yazoo City, Miss., alleging fraud in the procurement of said contracts, and alleging incompetency and misjudgment in the conduct of certain litigation in the state of Georgia. It is alleged that James M. Smith, of Oglethorpe county, Ga., died in said county on the 11th day of December, 1915, leaving no direct descendants, and no father, mother, brother, or sister, but left certain descendants of three half-brothers of whom eight of them, the complainants in this cause, were residents of the state of Mississippi, and each of the said eight heirs was entitled to a one-thirty-sixth interest in the estate of the said Smith. James M. Smith left an estate of between two million dollars and three million dollars—alleged in the bill of complainant and admitted in the answer to be about three million dollars. When it was learned in Mississippi that James M. Smith had died and that the complainants and other Mississippi heirs were entitled to a portion of his estate, some of the Mississippi heirs living in Holmes county employed E. F. Noel to go to Georgia and look after their interests. There was no distinct contract as to the amount of fee to be paid, and complainant Mrs. Ella M. Chisolm had some kind of an agreement with Mr. Noel to look after her interest in the matter, but no distinct agreement was made as to the amount of the fee; it be-

ing then unknown exactly what the interest of the
Mississippi heirs in said estate would be, and what
litigation would be necessary to protect their inter-
ests.   Subsequent to this arrangement with Mr. Noel,
Mrs. Chisolm executed a power of attorney to one J.
T. Duggan, of Yazoo county, Miss., authorizing and
empowering said Duggan to represent Mrs. Chisolm
as attorney in fact and to employ attorneys at law,
and to make such settlements and compromises as
might be necessary to the proper care of her interest,
contracting and agreeing to pay the said Duggan ten
per cent. of whatever her interest in the estate of
J. M. Smith, deceased, might be.   This contract and
power of attorney read as follows:

"State of Mississippi, Yazoo County:  Be it known
that I, Mrs. Ella Chisolm, of the county of Yazoo,
state of Mississippi, for and in consideration of one
hundred dollars cash in hand paid me this day, re-
ceipt of which is hereby acknowledged, and for other
good and valuable consideration, and for services ren-
dered and to be rendered, do hereby appoint and em-
ploy J. T. Duggan, of Yazoo county, Miss., my agent
and attorney in fact to represent me in all matters
pertaining to the administration of the estate of
James M. Smith, deceased, of Oglethorpe county, Ga.,
in which I might have any interest as heir, distri-
butee, or otherwise, and do hereby consent for said
Duggan to employ an attorney, and to do any and all
things in his judgment necessary to protect my rights
and interest in said estate the same as I might do in
my own proper person, and consent that process is-
sued touching said estate may be served on said J. T.
Duggan; and that said Duggan for his services and
that of his attorney, employed by him herein, is to re-
ceive ten per cent. of whatever sum or sums I might
be entitled to out of said estate, which is hereby

agreed by me to be a fixed charge on my interest therein.

"Witness my signature this the 11th day of January, A. D. 1916.

"[Signed] MRS. ELLA CHISOLM.
"JOHN CHISOLM.

"State of Mississippi, Yazoo County: Personally appeared before me, J. T. Blount, justice of the peace, beat 3, Yazoo county, Miss., the within named Mrs. Ella Chisolm and John Chisolm, her husband, who acknowledge that they signed and delivered the foregoing power of attorney and agency on the day and year therein mentioned.

"Given under my hand and seal of my office this the 11th day of January, 1916.

"J. T. BLOUNT, Justice of the Peace.
"Beat 3, Yazoo County, Miss."

After the execution of this power of attorney Duggan employed C. F. Rhodes, the appellant in this case, at and for a fee of five per cent., or one-half of the ten per cent. contract made by Mrs. Chisolm and Duggan. This contract is made Exhibit B to the bill, and sets out in full the contract between Mrs. Chisolm and Duggan and then recites:

"Now, therefore, be it known that I, J. T. Duggan, do employ and appoint C. F. Rhodes, of Yazoo county, Miss., my agent and attorney in fact in said matter to do and perform all things soever concerning the interest of the said Mrs. Ella Chisolm in the estate of the said James M. Smith, deceased, of Oglethorpe county, Ga., as I might be empowered to do under and by virtue of said authority. And for and in consideration of ten dollars cash in hand paid me this day, receipt of which is hereby acknowledged, and for services rendered and to be rendered by said C. F. Rhodes as my agent and attorney in fact, I hereby assign, convey, and warrant to him one-half of the

ten per cent. interest in said James M. Smith's estate that is assigned me by said Mrs. Ella Chisolm.''

This contract was signed by J. T. Duggan and acknowledged before J. T. Blount, a justice of Yazoo county, Miss. This contract was then presented to Mrs. Ella Chisolm, and she ratified the same in the following words, to wit:

''State of Mississippi, County of Yazoo. Know all men by these presents, that I, Ella Marks Chisolm, of Yazoo county, and state of Mississippi, have chosen, constituted, and appointed J. T. Duggan, of Yazoo City, Yazoo county, state of Mississippi, my agent and attorney in fact, and C. F. Rhodes of Yazoo City, Yazoo county, state of Mississippi, my attorney, and do by these presents choose, constitute, and appoint the said parties my sole and lawful agent and attorney at law and in fact, for me and in my name to sue, settle, or compromise any and all claims, right, or interest which I may now have or hearafter have, as heir at law, legatee, distributee, or otherwise, on account or growing out of the estate of the late James M. Smith, deceased, of Oglethorpe county, Ga., and said agent and attorney are hereby lawfully authorized and empowered to receive and receipt for any and all money that may be due me, or to which I may be entitled, on account of said claim, right, or interest, as an heir at law, legatee, distributee, or otherwise, and to sign my name to any and all receipts, settlements, deeds, discharges, and acquittances, and any and all other contracts, agreements, or papers of whatever nature that may be necessary in the premises or collaterally thereto, and to do and perform any and all other acts or things that said agent and attorney may deem necessary and proper in the premises as they approve of and do for themselves, thereby binding me as fully and completely as if I were present in person and acting. And I

hereby ratify and confirm any and all acts of my said agent and attorney done in the premises. This power, being coupled with an interest in said agent and attorney, is final and irrevocable; said interest is fixed as ten per cent., five per cent. to each. I sanction and approve the measures taken by our said attorney in bringing suit in the United States courts for Mrs. Ella Marks Chisolm, and hereby ratify and adopt the pleadings therein as my own. All other powers of agency and attorney heretofore given by me, except such as are given to these my said agent and attorney, are hereby revoked and annulled.

"In witness whereof, I have hereto set my hand and affixed my seal this the 20th day of March, 1916.

"ELLA MARKS CHISOLM. [L. S.]

"Signed, sealed, and delivered in the presence of: Witnesses, Mr. R. A. Carson.

"Sworn to and subscribed before me this the 20th day of March, 1916. S. E. Montgomery, Justice of the Peace and Ex Officio Notary Public."

After this employment of Rhodes he went to the state of Georgia and there met Miss Ethel Smith, one of the complainants, and she executed the following contract:

"State of Georgia, Fulton County.

"Know all men by these presents, that Ethel Smith, of Shelby county, and state of Tennessee, have chosen, constituted, and appointed W. Lem Smith of Lexington, Holmes county, state of Mississippi, my agent, and C. F. Rhodes, of Yazoo county, state of Mississippi, my attorney, and do by these presents choose, constitute, and appoint the said parties my sole and lawful agent and attorney in the law and in fact, for me and in my name to sue, settle, or compromise any and all claims, right, or interest which I may now have or hereafter have, as heir at law, legatee, dis-

tributee, or otherwise, on account or growing out of the estate of the late James M. Smith, deceased, of Oglethorpe county, Ga., and said agent and attorney are hereby lawfully authorized and empowered to receive and receipt for any and all money that may be due me, or to which I may be entitled, on account of said claim, right, or interest, as an heir at law, legatee, distributee, or otherwise, and to sign my name to any and all receipts, settlements, deeds, discharges, and acquittances, and any and all other contracts, agreements, or papers of whatever nature that may be necessary in the premises, or collaterally thereto, and to do any and all other acts or things that said agent and attorney may deem necessary and proper in the premises, as they approve of and do for themselves and for any and all others whom they represent, thereby binding me as fully and completely as if I were present in person and acting. And I hereby ratify and confirm any and all acts of my said agent and attorney done in the premises. This power, being coupled with an interest in said agent and attorney, is final and irrevocable; said C. F. Rhodes' interest being five per cent. of my total. I sanction and approve the measure taken by our said attorney in bringing suit in the United States courts for Mrs. Ella Marks Chisolm, and hereby ratify and adopt the pleadings therein as my own. All other powers of agency or attorney heretofore given by me are revoked and annulled.

"In witness whereof, I have hereto set my hand and affixed my seal this 11th day of March, 1916.

ETHEL SMITH. [L. S.]."

Similar contracts were executed by Anna Lee Smith and W. Lem Smith to C. F. Rhodes. When the attorneys representing the Mississippi heirs in this state went to Georgia, they found that certain persons there had been appointed temporary administra-

tors of the estate of James M. Smith, deceased, upon a petition alleging that they were creditors of said estate, when in truth and in fact they were not creditors nor relatives, and consequently not authorized to have letters of administration upon said estate. These temporary administrators employed a lot of Georgia lawyers to represent them, among whom the leading and dominant spirit and character was one Hamilton McWhorter, who seems to have been a dominating figure in the politics and courts of Oglethorpe county, Ga. These temporary administrators, in applying for letters of administration, represented that the estate of James M. Smith, deceased, was worth twenty-five thousand dollars, and gave a fifty thousand dollar bond, whereas in truth and in fact it was worth at least two million, two hundred and twenty-five thousand dollars. Shortly after the grant of these letters to the temporary administrators, two additional temporary administrators were appointed, who gave an additional bond of fifty thousand dollars. One of the named temporary administrators was the son-in-law of McWhorter. McWhorter and his associates in Georgia obtained representation of the majority of the heirs of James M. Smith who lived in Georgia, and who controlled a majority interest in the estate, and under the law of Georgia it seems that the heirs had the right to select a permanent administrator or administrators. When Governor Noel went to Atlanta on his way to look after the estate, he consulted with an attorney of a trust company in Atlanta with reference to the administration of the estate, and the trust company agreed to administer the estate, furnish necessary bond, and employ its own counsel for the purposes of administration of the said estate, but not to include litigation between claimants, at and for the sum of thirty thousand dollars. Governor Noel and Mr.

Rhodes had a conference with McWhorter and his associates in which Noel and Rhodes urged that a fixed fee for the administrator be agreed upon, stating to McWhorter and the other attorneys representing the majority of the heirs the proposition that• had been made to Noel by the trust company, but McWhorter refused to entertain this proposition and insisted that the trust company was not authorized to administer, but that he· represented the majority in interest, and he would only agree to fees to be fixed by the court in which the estate was being administered. Under the law of Georgia the administrators might be paid as high as five per cent. of the estate administered by them as their compensation and might incur attorney's fees not to exceed ten per cent., and McWhorter and his associates insisted that they would not agree to any fee otherwise than that they would agree that the total would not exceed the five per cent. and ten per cent. authorized under the law, but would not agree to any minimum. Governor Noel and Mr. Rhodes persisted in an effort to fix fees by agreement on the theory that it would be more economical to have an agree-• ment with reference to fees than it would for the court to fix them, especially where it appeared, as it did in this case, that McWhorter and his associates would dominate the ordinary of Oglethorpe county, who was authorized to fix the fees, and finally made the proposition to pay as high as two hundred and twenty-five thousand dollars for administrator and attorney fees, which offer was refused by McWhorter.

The line of heirs known as the Zadoc Smith heirs, of whom the appellees in this case are a part, seem to have the advantage in the fact that some of them were residents of Georgia in touch with local situation and able to make proof of their heirship. There were certain other claimants claiming that the deceased Smith descended from a different ancestor than

Zadoc Smith, and there was some contest being had both in the state and the federal courts in Georgia as to who were the rightful heirs of the deceased. The parties known in the record as the Jennings heirs or claimants, who are styled by the parties in this litigation as the "bogus" heirs, had filed a bill in the district court of Georgia at Macon, Ga., being within the Southern district of Georgia, in which district the deceased had a large estate in lands, but his residence was in the Northern district, which was presided over by a different judge from the judge of the Southern district. The Jennings heirs, conceiving it to be to their advantage to have the contest in the district court of the Southern district, and being non-residents of the state of Georgia, filed their bill in the federal court, alleging that they were heirs of the deceased, and alleging that the Zadoc Smith heirs or claimants were not legal heirs of Smith, the deceased, and alleging that the temporary administrators had perpetrated a fraud upon the court of ordinary in Oglethorpe county by which they had obtained the administration by false representations, and further alleging that the temporary administrators and their attorneys colluded with the Zadoc Smith heirs, and by virtue of the dominating influence and control of the state courts by McWhorter and his associates that they were in danger of being defeated of their rights as heirs of James M. Smith, and prayed that the federal court take jurisdiction and adjudicate the question of the heirship and would appoint receivers to care for the property pending such contest, filing said suit on the equity side of the court and making the Zadoc Smith claimants parties defendant. In view of these developments, Rhodes contended that it was best for the Zadoc Smith heirs, and especially the Mississippi part of those heirs, to go into the federal court and file a cross-bill invoking the jurisdiction of the court and

to appoint receivers so that the estate might be gotten out of the hands of the temporary administrators and their attorneys. Governor Noel insisted that it was to the interest of the Zadoc Smith heirs, including the Mississippi part of them, to keep the controversy in the state court, and that these claimants would have the advantage of local influences and of the said courts on the question of the heirship.

Rhodes filed a bill on behalf of Mrs. Ella Chisolm, under his power of attorney, in the federal court, and returned to Mississippi and took up with other heirs the question of putting them in the federal court in the same way that Mrs. Chisolm had intervened through him. A conference was called of the Mississippi heirs other than Mrs. Chisolm at Lexington, Miss., to discuss the matter. Governor Noel and Mr. Rhodes met the heirs and they discussed the matter at some length; Rhodes contending that they should go into federal court, and Noel contending that they should remain in the state court and try to defeat the federal jurisdiction. · Noel and Rhodes left the place of meeting together, without having the heirs reach any agreement about the matter. Lem Smith was with Rhodes and was insisting that the federal court was the proper forum under the circumstances developed in Georgia. After Noel left, Lem Smith and Rhodes and the other Mississippi heirs returned to the place where the heirs were assembled and procured contracts authorizing Rhodes to place all Mississippi heirs in federal .court; the instrument reciting that they approved and ratified Rhodes' action in going to the federal court and giving him full authority to represent them and put them in that court. The acknowledgments to these contracts were taken before J. H. Fuqua, chancery clerk of Holmes county, and were taken part about dark and a part shortly after that time. The appellees contended that

they did not know the contents of these powers of attorney authorizing Rhodes to place them in the federal court, and that they signed and executed the papers upon the representations that they were not in fact to be used in the federal court, but merely to be used for the purpose of bluffing McWhorter and the temporary administrators into a settlement Rhodes mailed the intervention proceedings authorized by these powers of attorney, which intervention and pleadings had been signed by the heirs, to the federal court, and placed all the Mississippi heirs in the federal court as cross-complainants. Fuqua informed Noel of the execution of these papers, and Noel a few days thereafter interviewed the parties who had lived at Lexington, including Anna Lee Smith, the complainant herein. Thereupon Noel returned to Georgia and interviewed Mrs. Jordan and Miss Ethel Smith and some of the other parties, and telegraphed to other parties in Mississippi to the effect that:

"I will reach Lexington to-morrow night. Mrs. Jordan says get Mrs. Chisolm and bring her here at once if possible. Rhodes is a traitor, she believes, and will leave to-night. Get Marks by Sunday so I can see you all then. Best for you all attend Augusta court and see who are lined up with your enemies."

Ethel Smith telegraphed Anna Lee Smith at Lexington as follows:

"See Lem and tell him to come to Athens on first train. He must get here by Saturday or sooner if he can. Wire me immediately when he will leave."

Lem telegraphed Ethel as follows:

"Do nothing. Everything all right. We leave here April 3d."

And again:

"Wait until I get there, may be a week. Lem."

Numerous other telegrams and letters appear in the record, showing that some of the heirs were dis-

satisfied with Rhodes' course and that some were then satisfied with it. Rhodes and Lem went to Atlanta and on reaching there were accosted by Miss Ethel Smith and others and charged with having betrayed them and of joining them with their enemies, that is, the enemies to the Zadoc Smith heirs. It seems that while Noel and Rhodes were absent from Georgia, McWhorter and Erwin (one of the temporary administrators) had approached Miss Ethel and Mrs. Jordan, or some of the heirs at Atlanta, and had stated that Rhodes had joined in with the Jennings crowd and had sold them out or betrayed them, and also represented that it was not necessary for them to have any attorneys and tried to secure the discharge of both Rhodes and Noel. When Noel returned to Georgia he had a conference with McWhorter and his associates and made an arrangement with them by which Mississippi heirs were to get ten per cent. of the fees allowed the attorneys for the administrators for their attorney, Mr. Noel, but stated to them that he would credit whatever amount was so received upon his fees. Thereupon Noel made contracts by which he was authorized to represent all of the Mississippi heirs and was authorized to take steps to defeat federal jurisdiction. On March 26th Governor Noel telegraphed John L. Tye, his associate attorney in Atlanta, as follows:

"Mrs. Chisolm here. Affidavit will be made and filed to-morrow. All will be in Atlanta by Friday. Saw Duggan and Lem after I left you. Both repudiated Rhodes, now disavowed by all completely. Monroe Smith, if possible, wishes to swear to pleadings, and not come. Write as to that."

When the federal court met, Governor Noel filed a proceeding challenging Rhodes' right to represent the Mississippi heirs and demanding that he be allowed complete control of the litigation in behalf of the

Mississippi heirs of the Zadoc Smith claimants. They also demanded that Rhodes show his authority and that he surrender his powers of attorney. Prior to that time Rhodes had surrendered the contracts procured at Lexington from the other Mississippi heirs not involved in this suit, but he refused to surrender his powers of attorney for the appellees in this case and refused to exhibit them to Noel and McWhorter, but exhibited them to the federal judge.

The record in this case is extremely prolix, consisting of one thousand five hundred and ninety pages, and it has been elaborately briefed, and we deem it unnecessary, in view of our conclusion, to review all the facts and circumstances in evidence. Rhodes filed a cross-bill in the court below asking that his contracts be upheld and enforced. The chancellor sustained the bill of complaint, except as to Lem Smith, and decreed against Lem Smith for two thousand five hundred dollars on this contract, from which judgment Lem Smith prosecutes a cross-appeal. It appears from a painstaking consideration of the evidence in this record that the parties signed the contracts held by Rhodes and acknowledged them with full knowlege of their contents: also that they signed, with knowledge of their contents, papers authorizing the intervention in the federal court. We have reached the conclusion that the evidence wholly fails to sustain the allegations of the bill, and that there was no fraud such as would authorize the cancellation of these contracts. The things relied on to impeach the contracts are very largely antecedent verbal statements and claims of agreements wholly inconsistent with and contradictory to the terms of the written contract. It appears to our satisfaction that the dissatisfaction with Rhodes conduct by the appellees in this suit was inspired by the temporary administrators and their

attorneys, and these charges were wholly unfounded in fact. The evidence overwhemingly contradicts the version and claim of the appellees so far as they testify to any material fact, and it appears from the evidence of attorneys resident of Georgia, not interested in this suit and of high character, that Rhodes' conduct in Georgia was not such as to cause any just complaint or suspicion. In so far as his legal rights and conduct as an attorney between himself and the clients are concerned, we are unable to reach any conclusion that there was any fraud. Taking all the facts of this record together, and viewing them from an impartial standpoint, it appears that his desire to remove the litigation from the state court to the federal court was warranted, because the conduct of the temporary administrators and their attorneys was such as reasonably to lead to the belief that much of the estate would be dissipated in fees and it would probably be delayed; and if his clients had stood firm, the temporary administrators and their attorneys would probably have made reasonable terms as to fees, etc.

Reluctant as we are to reverse a chancellor upon facts, we feel that it is our duty to do so in this case and enter a judgment for the cross-appellant as against Mrs. Chisolm, Anna Lee Smith, and Ethel Smith in the same amount as was adjudged against Lem Smith on the main facts in the record in the court below, which, we think, upon the allegations and admissions of the bill and answer are reasonable and warrant it. Therefore to review the evidence would be a tiresome and unprofitable proceeding, and would be of no general interest. The judgment is reversed on direct appeal, and judgment entered in favor of Rhodes for two thousand and five hundred dollars against each of the appellees Ethel Smith, Mrs. Ella

M. Chisolm, and Anna Lee Smith, and on cross-appeal the judgment against Lem Smith is affirmed.

Reversed on direct and affirmed on cross-appeal.

*Reversed.*

*Affirmed.*